TRINITY PETROLEUM, INC., Plaintiff-Respondent,

v.

SCOTT OIL COMPANY, INC.,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2005AP2837. Oral argument April 11, 2007.
—Decided July 6, 2007.*

2007 WI 88

(Also reported in 735 N.W.2d 1.)

301

For the defendant-appellant-petitioner there were briefs by *Alan H. Marcuvitz, Susan M. Sager, Juan S. Ramirez, Aaron H. Kastens,* and *Michael Best & Friedrich LLP,* Milwaukee, and oral argument by *Juan S. Ramirez.*

For the plaintiff-respondent there was a brief by *Douglas W. Rose* and *Rose & DeJong, S.C.,* Brookfield, and oral argument by *Douglas W. Rose.*

An amicus curiae brief was filed by *William C. Gleisner,* Milwaukee, and *Lynn R. Laufenberg* and *Laufenberg & Hoefle, S.C.,* on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals affirming the order of the circuit court for Waukesha County, James R. Kieffer, Judge.[1] The circuit court denied Scott Oil Company, Inc.'s (the defendant's) mo-

---

[1] *Trinity Petroleum, Inc. v. Scott Oil Co.,* 2006 WI App 219, 296 Wis. 2d 666, 724 N.W.2d 259.

tion for sanctions against Trinity Petroleum, Inc. (the plaintiff) for alleged frivolous commencement and maintenance of a lawsuit.

¶ 2. At issue in this case is the application of new Wis. Stat. § (Rule) 802.05 (2005–06) to the present litigation.

¶ 3. This court adopted new Wis. Stat. § (Rule) 802.05 (2005–06), pursuant to its rule-making authority under Wis. Stat. § 751.12 (2005–06), by Supreme Court Order 03–06 on March 31, 2005.[2] Supreme Court Order 03–06 repealed both Wis. Stat. §§ 802.05 and 814.025 (2003–04), and recreated Wis. Stat. § (Rule) 802.05 (2005–06). The effective date of the new rule was July 1, 2005.[3] On the effective date of the new rule the defendant's motion for summary judgment had not yet been decided by the circuit court. After the effective date of the new rule, the circuit court granted the summary judgment motion in favor of the defendant, and the defendant made oral and written motions to impose sanctions against the plaintiff for frivolous conduct, relying on former Wis. Stat. §§ 802.05 and 814.025 (2003–04).

¶ 4. We are asked to determine whether new Wis. Stat. § (Rule) 802.05 (2005–06) should be applied retroactively to the instant case. Inherent in this question are two issues: (1) whether the new rule has retroactive application, and (2) if the new rule has retroactive application, whether the instant case falls within an exception to retroactive application.

¶ 5. The circuit court in the instant case determined as a matter of law that the new rule, Wis. Stat. § (Rule) 802.05 (2005–06), had retroactive application,

[2] Supreme Court Order 03–06, 2005 WI 38, 278 Wis. 2d xiii.
[3] *Id.* at xiv.

without exception, and further determined that because the defendant did not and could not comply with the "safe harbor" notice provision, no sanctions would be imposed. In light of its conclusion of law, the circuit court did not determine in the instant case whether retroactive application of the new rule impaired contract rights, disturbed vested rights, or imposed an unreasonable burden on a party in the instant case and did not make final and conclusive findings on whether the plaintiff had either commenced or maintained a frivolous action.

¶ 6. The court of appeals affirmed the order of the circuit court denying the defendant's motion for sanctions, based on similar reasoning.

¶ 7. For the reasons set forth, we hold, like the circuit court and the court of appeals, that new Wis. Stat. § (Rule) 802.05 (2005–06) is a procedural rule and that procedural rules generally have retroactive application. We conclude that new rule Wis. Stat. § (Rule) 802.05 (2005–06) is not to be applied retroactively when the new rule diminishes a contract, disturbs vested rights, or imposes an unreasonable burden on the party charged with complying with the new rule's requirements.

¶ 8. We therefore reverse the decision of the court of appeals and the order of the circuit court. These courts erred as a matter of law in holding that new rule Wis. Stat. § (Rule) 802.05 (2005–06) had retroactive application without exception. We remand the cause to the circuit court for further proceedings consistent with this opinion. The circuit court must determine whether retroactive application of new Wis. Stat. § (Rule) 802.05 (2005–06) imposes an unreasonable burden on a party who must comply with the procedural requirements of the new rule. After determining which provision—

either Wis. Stat. § (Rule) 802.05 (2005–06) or §§ 802.05 and 814.025 (2003–04)—to apply using the unreasonable burden standard, the circuit court must determine under the applicable provision whether the plaintiff engaged in frivolous conduct in commencing or maintaining the lawsuit and what sanctions, if any, should be imposed on the plaintiff.

I

¶ 9. This review arises from the circuit court's order denying the defendant's motion for sanctions against the plaintiff for commencing and maintaining a frivolous lawsuit. The procedural posture of the case for purposes of deciding the issue on review, the retroactive application of Wis. Stat. § (Rule) 802.05 (2005–06), is set forth below and is not in dispute.

¶ 10. The parties entered into a five-year written contract pursuant to which the plaintiff would transport the defendant's petroleum products to the defendant's customers. According to contractual provisions, the defendant could terminate the contract with 60 days' notice if the plaintiff failed to perform to the "customer's satisfaction."

¶ 11. On February 6, 2004, the defendant formally notified the plaintiff that, pursuant to its rights under the contract, it was terminating the contract because it was not satisfied with the plaintiff's performance; the defendant explained that it had received several complaints from its customers about the plaintiff's poor service in delivering petroleum products.

¶ 12. On April 6, 2004, the plaintiff filed suit against the defendant alleging breach of contract. The parties disagreed about the meaning of the phrase "customer's satisfaction" in the contract. In its respon-

sive pleadings, the defendant did not raise any issue of frivolousness. The defendant, however, contends that at subsequent stages of the proceeding it alerted the plaintiff of its belief that the commencement and maintenance of the action were frivolous.[4]

¶ 13. The defendant submitted interrogatories and document requests to the plaintiff, beginning in December 2004, to prove that even under the plaintiff's own contractual interpretation, the plaintiff did not have a viable case for breach of contract.

¶ 14. On April 5, 2005, the defendant moved for summary judgment against the plaintiff. The circuit court initially scheduled the hearing on the defendant's motion for summary judgment for June 6, 2005. This hearing was postponed, however, until July 5, 2005, in order to accommodate the receipt of transcripts from a deposition taken on May 27, 2005.[5] The defendant blames the plaintiff for this delay. A letter submitted by the defense counsel to the circuit court states, however, that both parties requested this postponement.[6]

---

[4] The defendant points to its assertions that the lawsuit was frivolous in its mediation statement in March 2005, in its response to the plaintiff's motion to quash the defendant's motion to compel in April 2005, in its brief in response to the plaintiff's motion to quash in April 2005, in the defendant's pretrial report of April 5, 2005; and in the hearing on May 16, 2005 on the plaintiff's motion to quash.

[5] This deposition had been scheduled for an earlier date but was delayed to accommodate an ultimately unsuccessful motion brought by the plaintiff to quash the deposition.

[6] The letter drafted by defense counsel, dated May 27, 2005, and addressed to the Honorable James R. Keiffer, reads in relevant part: "Because the deposition transcripts would not be available by the Tuesday date, and such a short time frame before the reply brief due date, both counsel asked your clerk

¶ 15. While the litigation in the instant case was before the circuit court, this court issued Supreme Court Order 03–06 on March 31, 2005, changing the rules governing sanctions for frivolous conduct. Effective July 1, 2005, Wis. Stat. §§ 802.05 and 814.025 (2003–04) were repealed and Wis. Stat. § (Rule) 802.05 (2005–06) was adopted.

¶ 16. At the conclusion of the summary judgment hearing on July 5, 2005, the circuit court granted summary judgment in favor of the defendant,[7] and the defendant orally moved for costs and reasonable attorney fees, claiming that the plaintiff frivolously commenced and maintained its claim against the defendant. The circuit court refused to grant the defendant's oral motion, concluding that the motion was not properly before it. The circuit court, however, invited the defendant to file a written motion for sanctions. Specifically, the circuit court stated: "If Scott Oil [the defendant] wishes to renew that request saying that in its opinion it believes this action was a frivolous matter and they are then continuing to ask the court to impose costs, they can file that motion at the appropriate time . . . ."

¶ 17. The defendant filed a written motion for imposition of sanctions (costs and reasonable attorney fees) on July 21, 2005, after the effective date of new

for a new hearing date. She complied and changed the June 6, 2005 summary judgment hearing date to July 5, 2005, at 10:00 a.m." The letter continues, "By mutual agreement of counsel, and with the court's approval, we are thus requesting that the summary judgment briefing schedule be changed based upon the new hearing date of July 5."

[7] The plaintiff does not challenge the circuit court order granting summary judgment as part of the instant proceedings and its validity is therefore not before the court.

rule Wis. Stat. § (Rule) 802.05 (2005–06). The defendant argued that, in light of the contract's clear terms and the numerous customer complaints, the plaintiff frivolously commenced and maintained its lawsuit. The defendant grounded its written motion for sanctions on former Wis. Stat. §§ 802.05 and 814.025 (2003–04). The defendant's motion did not mention Supreme Court Order 03–06 repealing former §§ 802.05 and 814.025 (2003–04) and recreating Wis. Stat. § (Rule) 802.05 (2005–06).

¶ 18. The circuit court heard arguments on August 29, 2005 on the defendant's written motion for sanctions. The circuit court concluded that "the new 802.05 applied in this case" and that the defendant had to comply with the "safe harbor" notice provision. Because the defendant had not complied and could not comply with the "safe harbor" notice provision, the circuit court denied the defendant's motion for sanctions.

¶ 19. On appeal, the court of appeals affirmed the circuit court's order denying the defendant's motion for sanctions, holding that new Wis. Stat. § (Rule) 802.05 (2005–06) was a procedural rule with retroactive application and that sanctions could not be granted because the defendant had not complied and could not comply with its "safe harbor" notice provisions.[8]

¶ 20. Court of Appeals Judge Daniel P. Anderson dissented from the court of appeals decision. Judge Anderson agreed with the majority that new Wis. Stat. § (Rule) 802.05 (2005–06) is a procedural rule. He did "not agree that it is to be applied retroactively under the particular facts of this case."[9] Judge Anderson con-

[8] *Trinity*, 296 Wis. 2d 666, ¶¶ 25, 28, 35–36.
[9] *Id.,* ¶ 37.

cluded that the new rule's "retroactive application would impose an unreasonable burden upon the administration of the judicial system and [the defendant]."[10] Just as amendments to Federal Rules of Civil Procedure Rule 11 should not be applied retroactively if not "just and practicable," the dissent reasoned that the 2005 recreation of Wis. Stat. § (Rule) 802.05 (2005–06) should not be applied retroactively if the amended version imposed an unreasonable burden on the party that has to comply with the procedural requirements.

## II

¶ 21. We begin our inquiry with a review of the provisions governing sanctions for frivolous claims. When the plaintiff commenced its action for breach of contract in April 2004, two provisions governed sanctions for commencing and maintaining frivolous actions: Wis. Stat. §§ 802.05 and 814.025 (2003–04).

¶ 22. Wisconsin Stat. § 802.05 (2003–04) was adopted as a court rule regulating pleading, practice, and procedure. Before it was recreated in 2005, it required in relevant part that pleadings, motions, and other papers had to be signed by an attorney or party and that such signature certifies "that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law . . . ."[11]

¶ 23. This provision also authorized a circuit court to order sanctions for a violation of any of these

---

[10] *Id.*

[11] Former Wis. Stat. § 802.05(1)(a) (2003–04) provided in full:

statutorily imposed duties. Sanctions were for the commencement of a frivolous action and were in the discretion of the court.[12] The sanction imposed by the circuit court "may include an order to pay to the other party the amount of reasonable expenses incurred by that

> Every pleading, motion or other paper of a party represented by an attorney shall contain the name, state bar number, if any, telephone number, and address of the attorney and the name of the attorney's law firm, if any, and shall be subscribed with the handwritten signature of at least one attorney of record in the individual's name. A party who is not represented by an attorney shall subscribe the pleading, motion or other paper with the party's handwritten signature and state his or her address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person who signed the pleading, motion or other paper, or on a represented party, or on both. The sanction may include an order to pay to the other party the amount of reasonable expenses incurred by that party because of the filing of the pleading, motion or other paper, including reasonable attorney fees.

[12] In this regard, former Wis. Stat. 802.05(1)(a) (2003–04) provided in pertinent part:

> If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, the court may, upon motion or upon its own initiative, impose an appropriate sanction

310

party because of the filing of the pleading, motion or other paper, including reasonable attorney fees."[13]

¶ 24. Wisconsin Stat. § 814.025 (2003–04) governed sanctions for commencing or continuing a frivolous action, counterclaim, defense, or cross claim and thus overlapped with § 802.05 (2003–04) regarding the commencement of a frivolous action.[14] Section 814.025 (2003–04) provided in relevant part that the circuit court shall award the successful party costs and reasonable attorney fees if the circuit court finds at any time of the proceedings, including at the conclusion of the case, that an action, counterclaim, defense or cross claim commenced or continued by a party is frivolous.[15] In adopting subsection (4) of § 814.025 (2003–04) in 1988, the legislature explicitly provided that "[t]o the extent s. 802.05 [2003–04] is applicable and differs from [s. 814.025], s. 802.05 applies."[16] The legislative intent

on the person who signed the pleading, motion or other paper, or on a represented party, or on both.

[13] Wis. Stat. § 802.05(1)(a) (2003–04).

[14] *Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 547, 597 N.W.2d 744 (1999) ("Both §§ 802.05 and 814.025 authorize a circuit court to sanction a party for commencing a frivolous action, while § 814.025 alone authorizes the imposition of sanctions upon a party maintaining a frivolous action.").

[15] Wisconsin Stat. § 814.025(1) (2003–04) provided as follows:

If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

[16] Wis. Stat. § 814.025(4) (2003–04).

as clearly expressed in the text was to have § 814.025 complement § (Rule) 802.05 and to have § (Rule) 802.05 be the governing provision.

¶ 25. As we explained previously, effective July 1, 2005, Supreme Court Order No. 03–06 repealed Wis. Stat. § 814.025 (2003–04) in its entirety[17] and repealed and recreated § 802.05 (2003–04) as Wis. Stat. § (Rule) 802.05 (2005–06).

¶ 26. The new rule, Wis. Stat. § (Rule) 802.05 (2005–06), differs from the previous provisions governing sanctions for frivolous conduct, Wis. Stat. §§ 802.05 and 814.025 (2003–04), in several respects. Relevant to the instant case are two changes in new Wis. Stat. § (Rule) 802.05 (2005–06).

¶ 27. First, new Wis. Stat. § (Rule) 802.05 (2005–06) includes a "safe harbor" notice provision. A party alleging frivolous conduct and seeking sanctions must serve on the non-moving party its motion for sanctions at least 21 days before filing the motion with the circuit court, providing the non-moving party an opportunity to correct or withdraw its allegedly offend-

---

[17] The court explained its repeal of Wis. Stat. § 814.025 (2003–04) as follows:

> In response to the concerns regarding our decision to repeal s. 814.025, we note that in April 1988, the legislature adopted subsection (4) to s. 814.025 to explicitly provide that, "to the extent s. 802.05 is applicable and differs from this section, s. 802.05 applies." As we revise s. 802.05, we heed the legislative directive; the differences between these two provisions have engendered confusion. The legislature has indicated that to the extent the two provisions differ, Wis. Stat. (Rule) § 802.05 should control. Therefore, in order to prevent confusion for litigants and the courts, as we repeal and recreate s. 802.05, we also repeal s. 814.025. We conclude that this repeal is in keeping with the legislative directive set forth in s. 814.025(4).

Supreme Court Order 03–06, 278 Wis. 2d at xiii-xiv.

ing paper. The motion for sanctions may not be filed with the circuit court unless within 21 days the non-moving party does not withdraw or appropriately correct the offending matter. This part of § (Rule) 802.05(3)(a)1. (2005–06) states in relevant part as follows:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate sub. (2). The motion shall be served as provided in s. 801.14, but shall not be filed with or presented to the court unless, within 21 days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

¶ 28. Second, sanctions, including costs and reasonable attorney fees, are no longer mandatory upon a circuit court's finding of frivolousness.[18] Former Wis. Stat. § 802.05 (2003–04) provided that the imposition of sanctions, including costs and reasonable attorney fees, was in the circuit court's discretion, but under Wis. Stat. § 814.025 (2003–04) sanctions in the form of costs

---

[18] New Wis. Stat. § (Rule) 802.05 (2005–06) now provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that sub. (2) has been violated, the court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated sub. (2) or are responsible for the violation . . . ." Wis. Stat. § (Rule) 802.05(3) (2005–06).

This sanction may include attorneys fees: "[T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney fees and other expenses incurred as a direct result of the violation . . . ." Wis. Stat. § (Rule) 802.05(3)(b) (2005–06).

313

and reasonable attorney fees were mandatory upon a circuit court's appropriate findings.

¶ 29. Several other aspects of new rule Wis. Stat. § (Rule) 802.05 (2005–06) differ from former §§ 802.05 and 814.025 (2003–04). The differences include the description of the conduct subjecting a party to sanctions and the type of sanctions that may be imposed. The differences between the former provisions and the new rule may become relevant on remand, but we will not discuss them further here.

¶ 30. We turn next to examine whether the new rule, Wis. Stat. § (Rule) 802.05 (2005–06), should have retroactive application in the instant case or whether the defendant's motion for sanctions should be analyzed under former Wis. Stat. §§ 802.05 and 814.025 (2003–04).

III

¶ 31. The central issue before the court is the application of new Wis. Stat. § (Rule) 802.05 (2005–06) to the defendant's motion for sanctions, which the defendant filed after the effective date of the new rule. The motion, however, relates to the plaintiff's conduct occurring prior to the effective date of the new rule.

¶ 32. The interpretation of a statute promulgated under this court's rule-making authority presents a question of law, which this court reviews independently, but benefiting from the analyses of the circuit court and the court of appeals.[19] Whether a statute promulgated under this court's rule-making authority merits retro-

---

[19] *Waters ex rel. Skow v. Pertzborn,* 2001 WI 62, ¶ 16, 243 Wis. 2d 703, 627 N.W.2d 497.

active or prospective application is also a question of law, which this court decides independently, but benefiting from the analyses of the circuit court and the court of appeals.[20]

¶ 33. The defendant insists that new Wis. Stat. § (Rule) 802.05 (2005–06) does not apply to its motion for sanctions, including costs and reasonable attorney fees, filed after the effective date of the new rule but relating to conduct occurring before the effective date. The defendant asserts that a prospective application of the new procedural rule is necessary under the *Chevron/Kurtz*[21] factors to mitigate the hardships that would occur with retroactive application and beseeches this court to apply former Wis. Stat. §§ 802.05 and 814.025 (2003–04) to its motion.

¶ 34. In contrast, the plaintiff asserts that new Wis. Stat. § (Rule) 802.05 (2005–06) applies in the instant case. The plaintiff argues that the new rule is one of procedure and should be given retroactive application. According to the plaintiff, no need exists to consider whether retroactive application of the new rule would impose an unreasonable burden on the defendant attempting to comply with the new procedural requirements.

¶ 35. We do not agree completely with either party. The plaintiff errs in asserting that retroactive application is an absolute rule applying to all procedural rules. The defendant errs in applying the *Chevron/Kurtz* factors to gauge whether retroactive

---

[20] *Snopek v. Lakeland Medical Center,* 223 Wis. 2d 288, 293, 588 N.W.2d 19 (1999) (whether a statute can be applied retroactively is a question of law the court determines independently of other courts).

[21] *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971); *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 280 N.W.2d 757 (1979).

application of the new rule is appropriate in the instant case. Accordingly, we set forth the analysis to be used in determining whether new Wis. Stat. § (Rule) 802.05 (2005–06) has retroactive application in the instant case.

¶ 36. We begin by examining whether the text of the new rule and the order adopting it hold the answer to this dispute about the retroactive application of the new rule. They do not.

¶ 37. The text of the new rule is silent about its prospective or retroactive application to conduct occurring prior to the effective date of the rule.

¶ 38. Supreme Court Order 03–06, which recreated new Wis. Stat. § (Rule) 802.05 (2005–06), does not provide any explicit guidance regarding the retroactive or prospective application of the new rule to conduct that occurred before the rule's effective date. All that Supreme Court Order 03–06 states is that "[e]ffective July 1, 2005 Wis. Stat. § 814.025 is repealed" and "[e]ffective July 1, Wis. Stat. § 802.05 is repealed and is recreated . . . ."[22] "The establishment of effective dates does not determine whether a statute will apply retroactively. All statutes have effective dates."[23]

¶ 39. In the absence of any help from the text of the new rule or the order, we turn to the cases that govern retroactive application of a statute (including one adopted by the court through its rule-making authority). The cases require us to determine whether the newly adopted rule is procedural or substantive.

¶ 40. The general, well-recognized rule in Wisconsin jurisprudence is that "if a statute is procedural or

---

[22] Supreme Court Order 03–06, 278 Wis. 2d at xiv.

[23] *Salzman v. DNR,* 168 Wis. 2d 523, 530, 484 N.W.2d 337 (Ct. App. 1992).

remedial, rather than substantive, the statute is generally given retroactive application."[24]

¶ 41. The definitions of "substantive" and "procedural" are relatively easy to state but are not always easy to apply. Indeed, the procedural/substantive dichotomy depends on the context of the analysis. It is often written that if a statute creates, defines, and regulates rights and obligations, it is substantive. If a statute prescribes the method, that is, the legal machinery, used in enforcing a right or remedy, it is procedural.[25] "Procedural statutes have as their primary purpose the provision of expeditious means whereby someone who has a claim against someone else may apply for the assistance of the government to enforce it, and the means whereby the other party, against whom the claim is made, may interpose his defenses."[26] In

---

[24] *Gutter v. Seamandel,* 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981). In *Gutter,* this court explained that "[t]he general rule of statutory construction is that statutes are to be construed as relating to future and not to past acts. There is an exception to this rule: if a statute is procedural or remedial, rather than substantive, the statute is generally given retroactive application." *Id.* The *Gutter* court quoted Chancellor Kent, as follows: "This doctrine [prospective construction of statutes] is not understood to apply to remedial statutes, which may be of a retrospective nature, provided that they do not impair contracts or disturb absolute vested rights and only go to confirm rights already existing and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations." *Id.*

[25] *Betthauser v. Med. Protective Co.,* 172 Wis. 2d 141, 147–48, 493 N.W.2d 40 (1992) (quoting *City of Madison v. Town of Madison,* 127 Wis. 2d 96, 377 N.W.2d 221 (Ct. App. 1985)).

[26] 3A Norman J. Singer, *Sutherland Statutory Construction,* § 67.2 at 104–05 (6th ed. 2001).

other words, "[a] procedural law is that which concerns the manner and order of conducting suits or the mode of proceeding to enforce legal rights and the substantive law is one that establishes the rights and duties of a party."[27]

¶ 42. In adopting new rule Wis. Stat. § (Rule) 802.05 (2005–06), the court carefully deliberated whether the new rule was procedural or substantive and determined that the new rule is a procedural rule.[28]

¶ 43. The new rule was adopted pursuant to the rule-making authority of this court under Wis. Stat.

[27] 2 Singer, *supra* note 26, § 41.4 at 398.

[28] The adoption of this rule was part of an extensive process. On December 19, 2003, the court held a public hearing on a petition filed on July 8, 2003, by the American Board of Trial Advocates, Wisconsin Chapter; the Civil Trial Counsel of Wisconsin; the Wisconsin Academy of Trial Lawyers; and the Litigation Section of the State Bar of Wisconsin, seeking repeal of Wis. Stat. §§ 802.05 and 814.025 (2003–04), and adoption of the 1993 amendments to Federal Rule 11. At an ensuing open conference, the court approved the petition, subject to further consideration of certain issues. The court continued its discussion and deliberation at open administrative conference on November 16, 2004. This process, which included the participation and advice of many lawyers and organizations, culminated in the adoption of Supreme Court Order 03–06 on March 31, 2005.

Three Justices (Wilcox, Prosser, and Roggensack) dissented from Supreme Court Order 03–06, on the ground that Wis. Stat. § 814.025 was a substantive law, creating substantive rights, and the court did not have the power under § 751.12 or the constitution to repeal it. Supreme Court Order 03–06, 278 Wis. 2d at xxvi-xxxiii.

For further discussion of this court's adoption of Supreme Court Order 03–06, *see* Janine P. Geske & William C. Gleisner III, *Frivolous Sanction Law in Wisconsin,* Wisconsin Lawyer, Feb. 2006, at 16.

§ 751.12 (2005–06).[29] Under this statute, this court has authority to regulate pleading, practice, and procedure. Wisconsin Stat. § 751.12(1) clearly commands that the rules adopted by the supreme court "shall not abridge, enlarge, or modify the substantive rights of any litigant."[30] Accordingly, new Wis. Stat. § (Rule) 802.05 (2005–06) was intended by this court as a rule of procedure designed to deter frivolous filings because they disrupt and delay the legitimate court cases, thereby bogging down the court system.

¶ 44. In Supreme Court Order 03–06, the court stated that "[t]he court's intent is to simplify and harmonize the rules of pleading, practice and procedure, and to promote the speedy determination of litigation on the merits."[31] With the new rule, "the court intends to provide Wisconsin courts with additional tools to deal with frivolous filing of pleadings and other papers."[32] The court stated that it did "not intend to deprive a party wronged by frivolous conduct of a right to recovery."[33]

---

[29] Wisconsin Stat. § 751.12(1) states in relevant part:

> The state supreme court shall, by rules promulgated by it from time to time, regulate pleading, practice, and procedure in judicial proceedings in all courts, for the purposes of simplifying the same and of promoting the speedy determination of litigation upon its merits. The rules shall not abridge, enlarge, or modify the substantive rights of any litigant.

[30] We confine our discussion to the court's rule making powers as defined in Wis. Stat. § 751.12, not other powers of the court. *See In re Constitutionality of Section 251.18, Wis. Stats.,* 204 Wis. 501, 236 N.W.717 (1931).

[31] Supreme Court Order 03–06, 278 Wis. 2d at xvii.

[32] *Id.*

[33] *Id.*

¶ 45. Nothing presented in the instant case dissuades us from concluding that the court created in new Wis. Stat. § (Rule) 802.05 a new rule of procedure designed (as was the former § 802.05 (2003–04)) to deter frivolous actions to benefit sound judicial administration of the court system. Several factors continue to persuade us that the new rule is procedural.

¶ 46. First, Wis. Stat. § 802.05 (2003–04) has always been part of the state rules of civil procedure, which are designed as a procedural system to provide a just and speedy determination of civil litigation. The Judicial Council initially petitioned the court in 1974 to adopt § 802.05 and other provisions, explaining that the proposed rules were limited to matters of procedure and did not create substantive rights.

¶ 47. Second, the same procedural purposes underlie former and new Wis. Stat. § 802.05: § 802.05 is primarily designed to deter baseless filings in court and unnecessary or improper litigation, to promote the speedy determination of litigation on the merits, and to promote judicial efficiency. Moreover, these same purposes underlie former Wis. Stat. § 814.025 (2003–04). In *Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 576, 597 N.W.2d 744 (1999), the court explained that the underlying purposes of § 814.025 are deterrence and punishment. In *Stoll v. Adriansen*, 122 Wis. 2d 503, 511, 362 N.W.2d 182 (Ct. App. 1984), the court of appeals stated that "[t]he trial court must enforce sec. 814.025 for the purpose of maintaining the integrity of the judicial system and the legal profession." Section 814.025 (2003–04) is therefore at its essence procedural, although the court has recognized that compensation of a victimized party is an appropriate consideration.[34]

---

[34] *Jandrt,* 227 Wis. 2d at 578.

¶ 48. The legislature did not create a substantive, vested right to costs and reasonable attorney fees in former Wis. Stat. § 814.025 (2003–04).[35] Only upon a finding by a circuit court that an action was frivolous under § 814.025 (when that statute was still in effect) would an aggrieved party obtain a vested right to recover reasonable expenses under the statute. The circuit court made no such finding in the instant case before the repeal of § 814.025. "No litigant has a vested right in a particular remedy, so he can have none in rules of procedure which relate to the remedy."[36] As is clear from the text, no right to relief under former § 814.025 could accrue until there was a finding of frivolousness by the circuit court.

¶ 49. Third, when it first drafted Wis. Stat. § 802.05 (2003–04) in the early 1970s, the Judicial Council indisputably patterned it after Rule 11 of the Federal Rules of Civil Procedure. Subsequent amendments to § 802.05 have explicitly incorporated amendments to Rule 11. The latest version of § 802.05 is no

---

[35] Because no substantive rights are implicated, we need not, and do not, address Wis. Stat. § 990.04 (2005–06). This statute provides in relevant part:

> The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in the course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefore shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute.

[36] *Strange v. Harwood*, 172 Wis. 24, 26, 177 N.W. 862 (1920), *quoted with approval in Elm Park Iowa, Inc. v. Denniston*, 91 Wis. 2d 227, 229, 280 N.W.2d 262 (1979).

exception. New Wis. Stat. § (Rule) 802.05 (2005–06) was patterned after Rule 11, as amended in 1993.[37]

¶ 50. Rule 11 is a well-known rule of procedure. The United States Supreme Court has emphasized that "the central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts."[38] The Second Circuit Court of Appeals has also emphasized the procedural nature of Rule 11, announcing that the goal of Rule 11 is to "discourag[e] dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process."[39]

■

¶ 51. For these reasons, we reaffirm our decision that new Wis. Stat. § (Rule) 802.05 (2005–06) is proce-

---

[37] In Supreme Court Order 03–06, the court announced that "[t]he court now adopts the current version of FRCP 11." 278 Wis. 2d at xvii.

[38] *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, (1990).

[39] *McMahon v. Shearson/Am. Express, Inc.,* 896 F.2d 17, 21 (2d Cir. 1990).

Substantial scholarly commentary exists on Rule 11 of the Federal Rules of Civil Procedure. Most agree that the overriding purpose of Rule 11 is to deter baseless filings and improve the litigation process. Several commentaries, however, have been critical of Rule 11, especially as amended in 1983. For a discussion of whether the 1983 amendments to Rule 11 were beyond the Supreme Court's power, see Steven B. Burbank, Comment, *Sanctions in the Proposed Amendments to the Federal Rules of Civil Procedure: Some Questions About Power,* 11 Hofstra L. Rev. 997 (1983). For a summary of the criticisms of the 1983 amendments, see Carl Tobias, *The 1993 Revision of Federal Rule 11,* 70 Ind. L.J. 171 (1994) (explaining that many view Rule 11 as amended in 1983 as a fee-shifting statute that provided compensation to aggrieved parties).

dural in nature. We agree with the court of appeals when it concluded in the present case that "[a]t its heart, then, the frivolous action statute is a rule of judicial administration."[40] We therefore reject, as did the court of appeals, the defendant's contention that new Wis. Stat. § (Rule) 802.05 (2005–06) is substantive in nature.

¶ 52. Because we characterize new Wis. Stat. § (Rule) 802.05 (2005–06) as a procedural rule, we conclude, in accordance with case law, that the application of the new rule is ordinarily retroactive, that is, there is a presumption of retroactive application of the new rule to cases like the instant one in which the conduct occurred prior to the new rule's effective date and the motion was made after the new rule's effective date.

■

¶ 53. Retroactive application of procedural rules is not, however, an absolute rule. For example, a procedural statute will not have retroactive application if it impairs contracts or disturbs vested rights. The court has stated that "it is a fundamental rule of statutory construction that a retroactive operation is not to be given so as to impair an existing right or obligation *otherwise than in matters of procedure . . . .*"[41] Furthermore, retroactive application of a procedural rule must not "impose[] an unreasonable burden" upon the party attempting to comply with the procedural requirements of the rule.[42]

¶ 54. This court's analysis in *Mosing v. Hagen,* 33 Wis. 2d 636, 148 N.W.2d 93 (1967), is particularly instructive in teaching that retroactive application of

---

[40] *Trinity,* 296 Wis. 2d 666, ¶ 21.

[41] *Gutter v. Seamandel,* 103 Wis. 2d 1, 17–18, 308 N.W.2d 403 (1981) (quoted source omitted).

[42] *Mosing v. Hagen,* 33 Wis. 2d 636, 642, 148 N.W.2d 93 (1967).

procedural rules is not absolute. *Mosing* held that a statute (that was adopted by the court through its rulemaking authority pursuant to Wis. Stat. § 751.12) applied retroactively unless it affected a vested or contractual right or imposed an unreasonable burden upon the party attempting to comply with the procedural requirements.

¶ 55. In *Mosing,* the new statute at issue provided that service of summons is invalid if the summons is not filed with the clerk of the circuit court within one year of service. The effective date of the statute establishing the filing requirement for a summons was May 1, 1965 (although the statute had been adopted January 20, 1964).

¶ 56. The summons was served in *Mosing* on November 20, 1964, but it was not filed with the circuit court until January 20, 1966. If service was void in *Mosing* because the summons was not filed within the one-year period, the plaintiff could not reinstitute the suit because the statute of limitations had run. The plaintiff argued that the statute affected a vested right of the plaintiff and was therefore substantive in effect and should not be applied retroactively. According to the plaintiff, he acquired a vested right to pursue his personal injury action on November 12, 1964, when he served the summons, and on that date he had no obligation to file his summons with the circuit court within one year in order for the summons to be valid.

¶ 57. The *Mosing* court examined whether the statute's "application affects any substantive rights [a phrase that is used in the cases interchangeably with "vested rights"]" and whether the statute "imposes an unreasonable burden upon the plaintiff as to its procedural requirements."[43]

---

[43] *Id.*

¶ 58. The *Mosing* court concluded that the statute did not diminish the period of limitations and was therefore not substantive in effect, that is, it did not disturb the plaintiff's vested right to assert his cause of action.

¶ 59. The *Mosing* court further concluded that the statute did not impose an unreasonable burden on the party charged with complying with the procedural requirements because the court had given notice of the statute and delayed the effective date of the statute. In short, the party serving the summons was aware of the new requirement and could have complied with it. The *Mosing* court held that the new procedural statute should therefore be applied retroactively to the summons served before the effective date of the statute at issue.[44]

¶ 60. The court should adhere to the teachings of *Mosing* to determine whether new Wis. Stat. § (Rule) 802.05 (2005–06) should be applied retroactively in the present case. We first must decide whether any substantive rights, that is, whether any contractual or vested rights, would be disturbed by the retroactive application of new Wis. Stat. § (Rule) 802.05 (2005–06).

¶ 61. No contract right is disturbed in the present case if new Wis. Stat. § (Rule) 802.05 (2005–06) were to apply in the instant litigation.

¶ 62. No substantive vested right is disturbed in the present case. As we discussed earlier, until a circuit court made a finding of frivolousness under Wis. Stat. § 814.025 (2003–04), no right to relief accrued. Recovery of reasonable attorney fees was not a vested right; it was a remedy for violation of a procedural statute. The

---

[44] *Id.*

circuit court in the instant case did not make any finding of frivolousness before the effective date of new Wis. Stat. § (Rule) 802.05 (2005–06). As we stated before, a litigant does not have a vested right in a particular remedy or in rules of procedure that relate to a remedy.

■

¶ 63. Our analysis is also guided by the federal court's application of Rule 11, which has been amended several times from 1938 through 1993. In the course of the amendments, the sanctions in Rule 11 have shifted from discretionary sanctions to mandatory sanctions and then back to discretionary sanctions. Federal courts have not viewed mandatory sanctions under Rule 11 as vesting rights to certain sanctions when Rule 11 was amended once again to provide sanctions only in the discretion of the federal courts. We conclude that "[r]ules governing the award of attorneys' fees do not affect the substantive rights of the parties; rather, they are closer to rules that regulate the conduct of the trial or affect the remedy available . . . ."[45]

■

¶ 64. Accordingly, we conclude that the court did not modify or eliminate any vested rights belonging to any party when it repealed Wis. Stat. §§ 802.05 and 814.025 (2003–04) and replaced them with new Wis. Stat. § (Rule) 802.05 (2005–06).

¶ 65. We therefore turn to the question whether, in the words of the *Mosing* court, the retroactive application of Wis. Stat. § (Rule) 802.05 (2005–06) to the instant case "imposes an unreasonable burden" upon a party required to comply with the procedural requirements of the new rule.

---

[45] *Midwest Grain Prods. of Ill. v. Productization, Inc.*, 228 F.3d 784, 792 (7th Cir. 2000) (citing Illinois law).

¶ 66. The plaintiff argues that the *Mosing* standard, which requires that the retroactive application of a procedural statute "not impose an unreasonable burden," is unsupported in the case law. As an example, the plaintiff cites *Gutter v. Seamandel,* which states the standard governing the retroactive application of statutes but does not include the "unreasonable burden" test. The plaintiff insists that *Mosing*'s "unreasonable burden" language is superfluous and does not amount to a precedential rule of law.

¶ 67. We do not agree with the plaintiff. *Mosing* has never been overturned. It is good law, and it is supported by federal Rule 11 and federal cases interpreting and applying Rule 11. The federal order adopting the 1993 amendments to Rule 11 expressly instructed that the amended version Rule 11 governs "all proceedings in civil cases thereafter commenced and, insofar as *just and practicable,* all proceedings in civil cases then pending."[46]

¶ 68. The federal standard for retroactive application of Rule 11, namely "just and practicable," requires essentially the same analysis as, in the words of the *Mosing* court, whether retroactive application of a statute would "impose an unreasonable burden upon [the party] as to its procedural requirement." The *Mosing* holding regarding the application of a statute adopted by the court under its rule-making powers parallels the federal law and cases governing retroactive application of Rule 11, and we apply *Mosing* to the instant case.[47]

---

[46] *Amendments to Federal Rules of Civil Procedure,* 146 F.R.D. 404 (Apr. 22, 1993) (emphasis added). Other orders amending the Federal Rules of Civil Procedure also include this language.

[47] In its comment accompanying Order 03–06, the court explained that "Judges and practitioners will now be able to

¶ 69. In determining whether new Wis. Stat. § (Rule) 802.05 (2005–06) should be applied retroactively in the instant case, a circuit court must consider whether such retroactive application not only would affect contractual or vested rights but also would impose an unreasonable burden upon the party required to comply with the procedural requirements of the new rule.

¶ 70. We summarize three federal cases to illustrate the approaches taken by federal courts in determining whether the retroactive application of Rule 11 would be "just and practicable."

¶ 71. First is a federal case involving a situation parallel to the instant case, that is, a case in which the conduct at issue occurred prior to the effective date of the amended version of Rule 11 but the motion for sanctions was filed after the effective date of the amendment. In *Ware v. United States,* 154 F.R.D. 291 (M.D. Fla. 1994), the federal district court declared that to apply amended Rule 11 retroactively, the application of the amended rule must be "just and practicable." The federal court concluded that retroactive application of the amendment would not be "just and practicable" under the circumstances of the case. The federal district court reasoned that "[b]ecause this case has been ongoing for several years, and has a complex procedural history, this Court does not believe that it would be 'just

look to applicable decisions of federal courts since 1993 for guidance in the interpretation and application of the mandates of FRCP 11 in Wisconsin." Supreme Court Order 03–06, 278 Wis. 2d at xvii.

Although the court did not formally adopt the 1993 Federal Advisory Committee Notes to Rule 11 of the Federal Rules of Civil Procedure, the court included them in the Order for "information purposes." *Id.*

and practicable' to consider Plaintiff's motion for sanctions under the new Rule 11, and thus declines to do so at this time."[48] The federal district court specifically noted, however, "that this decision is based on the facts of this case only, and applies to the instant motion only."[49]

¶ 72. The second federal case involves a motion for sanctions that was filed before the effective date of the amended Rule 11 but was not heard by the federal district court until after the effective date. In *Kraemer Export Corp. v. Peg Perego U.S.A., Inc.*, No. 93CIV198(PKL), 1994 U.S. Dist. LEXIS 3071, at *21 (S.D.N.Y. Mar. 17, 1994), the United States Court for the Southern District of New York examined whether it would be "just and practicable" to apply the amended Rule 11 to this pending litigation and concluded that "the Court finds it just and appropriate to apply the version in effect at the time the motions were filed [that is, the unamended version of Rule 11]. Both plaintiff's cross-motion and defendant's response were submitted prior to the effective date of the Rule's amendment. Thus, counsel were familiar with the language and standards of the unamended Rule, and tailored their arguments before the Court accordingly. Moreover, to 'charge [a party] with knowledge of a rule not in effect at the time of filing [of the motion and the response] would not advance Rule 11's central goal of deterring baseless filings.' "[50]

---

[48] *Ware v. United States,* 154 F.R.D. 291, 292–93 (M.D. Fla. 1994).

[49] *Id.* at 293.

[50] *Kraemer Export Corp. v. Peg Perego U.S.A., Inc.,* No. 93CIV0198(PKL), 1994 U.S. Dist. LEXIS 3071, at *21 (S.D.N.Y. Mar. 17, 1994) (quoted source omitted).

¶ 73. Third and lastly, we look at a federal case in which the motion for sanctions was filed and heard by a federal district court before the effective date of amended Rule 11, but the decision of the district court regarding sanctions was on appeal after the effective date of the amendments. In *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union,* 25 F.3d 509, 516 (7th Cir. 1994), the Seventh Circuit held that former Rule 11 should be applied because to conclude otherwise and impose the strictures of the amended Rule 11 would not be just and practicable: "Both at the time [the plaintiff] filed his complaint and when [the defendant] moved for sanctions, the old Rule 11 was in effect, and both parties presumably were operating under the standards and procedures propounded in that rule. Counsel's conduct should therefore be judged under those standards."

¶ 74. These three cases are not the only examples of how federal courts have examined whether it would be "just and practicable" to apply an amended version of Rule 11 to litigation in which the conduct occurred before the adoption of an amendment. We provide these examples of interpretation and application of Rule 11 to illustrate that federal courts, in determining whether retroactive application would be "just and practicable," specifically focus on and consider the unique circumstances and procedural posture of each particular case.

¶ 75. As mentioned earlier, the defendant has proposed the court apply the *Chevron/Kurtz* factors in determining whether new Wis. Stat. § (Rule) 802.05 (2005–06) was retroactive in the instant case.

¶ 76. In *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971), the Supreme Court established three factors to consider in determining whether the presumption of retroactivity for a judicial holding is overcome such that

the new judicial holding would apply prospectively only. This court adopted this standard in *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 109, 280 N.W.2d 757 (1979). Although the Supreme Court abandoned the *Chevron* standard in *Griffith v. Kentucky,* 479 U.S. 314, 322–23 (1987) (holding that a new judicial rule is retroactive to criminal cases pending on direct review or not final), and *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 97 (1993) (abandoning *Chevron* in civil cases), this court continues to adhere to the *Chevron/Kurtz* standard.[51]

¶ 77. The *Chevron/Kurtz* standard sets forth three factors a court considers in determining whether a new judicial holding should be applied retroactively or prospectively. These factors are:

> (1) Does the judicial holding "establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed?"
>
> (2) Will retroactive operation further or retard the operation of the judicial holding in question?
>
> (3) Will retroactive application produce substantial inequitable results?[52]

If these factors are met, the judicial holding in question should not be applied retroactively.

¶ 78. The *Chevron* test is not applicable to the present case. The *Chevron* test for determining prospectivity or retroactivity was adopted for application to judicial holdings, that is, to judicial declarations of the

---

[51] *State ex rel. Brown v. Bradley,* 2003 WI 14, ¶ 13, 259 Wis. 2d 630, 658 N.W.2d 427.

[52] *See Chevron,* 404 U.S. at 106; *see also Brown,* 259 Wis. 2d 630, ¶ 15.

law in a particular case. When adopting the *Chevron* factors for Wisconsin jurisprudence, the court in *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 108, 280 N.W.2d 757 (1979) specifically referred to judicial holdings: "Retroactive application of a judicial holding is a question of policy, not constitutional law. In *Chevron Oil Co. v. Huson* . . ., the Court articulated three factors to be considered in deciding whether a holding ought not to be applied retrospectively . . ." (citations omitted).

¶ 79. Cases involving the retroactive application of a statute or a rule, however, do not apply the *Chevron/Kurtz* factors. For instance, in *Snopek v. Lakeland Medical Center*, 223 Wis. 2d 288, 293, 588 N.W.2d 19 (1999), a case decided after *Chevron* and *Kurtz*, this court concluded that "[g]enerally, statutes are applied prospectively," but that a statute may be applied retroactively if the statute is "remedial or procedural rather than substantive."[53] The *Snopek* court restated the test enunciated in numerous cases, that if a statute is remedial or procedural, it nonetheless cannot be applied retroactively if the legislature clearly expressed its intent that it be applied prospectively only or if retroactive application would impair contracts or vested rights.[54] The *Snopek* court never mentioned the *Chevron/Kurtz* factors.

¶ 80. In asking this court to apply *Chevron/Kurtz*, the defendant relies on *State ex rel. Brown v. Bradley*, 2003 WI 14, 259 Wis. 2d 630, 658 N.W.2d 427. In *Brown*, the court spoke specifically of rules of civil procedure adopted by this court: "The standards for civil procedural rules differ [from criminal procedural rules] in

---

[53] *Snopek*, 223 Wis. 2d at 294.

[54] *Id.*

that retroactive application is presumed."[55] The *Brown* court proceeded to apply the *Chevron/Kurtz* factors, explaining that "in *Chevron Oil Co. v. Huson,* the Supreme Court established factors to consider in determining whether the presumption is overcome such that the new civil rule would apply prospectively."[56] This language, at first blush, seems to suggest that *Chevron/Kurtz* should be applied to any case involving a rule of civil procedure, including the instant case.

¶ 81. At issue in *Brown* was the retroactive application of a judicial holding, not the retroactive application of a procedural statute adopted by the court as part of its rule-making authority and codified in the statutes.[57] *Brown* did not apply *Chevron/Kurtz* to statutes or rules. *Brown* is thus inapposite. This court has not extended *Chevron/Kurtz* to determine whether statutes or rules (in contrast to judicial holdings) should have retroactive or prospective application.

¶ 82. We conclude that the *Chevron/Kurtz* test does not come into play when determining the retroactive application of a statute. Rather, a circuit court should adhere to the teachings of *Mosing* and the federal cases applying Rule 11 to determine whether new Wis. Stat. § (Rule) 802.05 (2005–06) is to be applied retroactively in a particular case.

## IV

¶ 83. The defendant's motion for sanctions alleges that the plaintiff engaged in frivolous conduct, both in

---

[55] *Brown,* 259 Wis. 2d 630, ¶ 13.

[56] *Id.*

[57] *Id.* (internal citations omitted). Specifically at issue in *Brown* was the retroactivity of the "tolling" tenet for self

333

commencing and maintaining its breach of contract action. The circuit court in the instant case held that, as a matter of law, the new Wis. Stat. § (Rule) 802.05 (2005–06) applied; that the defendant, in the instant case, could not comply with the "safe harbor" notice provision; and that the defendant's motion for sanctions must fail. The circuit court did not conclusively find that the plaintiff had engaged in frivolous conduct, and if so, whether any sanctions (including what kind) should be imposed.

¶ 84. Because it determined as a matter of law that new Wis. Stat. § (Rule) 802.05 (2005–06) applied retroactively, without exception, the circuit court did not determine whether the application of the new rule imposed an unreasonable burden in the instant case.[58]

¶ 85. The defendant provides several reasons why retroactive application of new Wis. Stat. § (Rule) 802.05 (2005–06) would impose an unreasonable burden on it

represented petitioners and the "prison mailbox rule," both judicial holdings in cases.

[58] Federal courts have taken different approaches in whether to apply all or just parts of Rule 11 retroactively. For instance, in *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994), and cases relying on this case, federal courts have judged the questionable conduct under Rule 11 in effect at the time the conduct occurred but assessed the sanctions under the amended rule.

Other federal courts apply the same version of Rule 11 to determine both whether sanctions were warranted and what kind of sanctions to impose. *See, e.g., Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F. 3d 368, 373 (6th Cir. 1996).

If new Wis. Stat. § (Rule) 802.05 is to be applied retroactively in the instant case, we do not address whether it should be applied retroactively in whole or in part. The parties did not raise or brief this issue.

in the instant case. For instance, the defendant argues that retroactive application of new rule Wis. Stat. § (Rule) 802.05 (2005–06) would impose an unreasonable burden because the defendant can no longer, under any circumstances, comply with the "safe harbor" notice provisions. It would impose an unreasonable burden and would not be just and practicable to apply a procedural rule retroactively to circumstances in which the defendant cannot comply with the new rule.

¶ 86. The defendant also contends that it has complied with the substance of the "safe harbor" notice provision. The defendant insists that throughout the course of the litigation, it put the plaintiff on notice that it believed the plaintiff's lawsuit was frivolous, and that the plaintiff did not withdraw its lawsuit.

¶ 87. The defendant asserts that the plaintiff's frivolous conduct occurred before the effective date of the new rule and that applying the new rule retroactively would give the plaintiff a "free pass," allowing it to escape any form of sanction for its frivolous conduct.

¶ 88. The defendant also insists that it was the plaintiff's fault that the hearing on summary judgment (and subsequent motion for sanctions) did not occur before the effective date of the new Wis. Stat. § (Rule) 802.05 (2005–06). The hearing was initially scheduled for June 6, 2005. The defendant argues that the hearing was postponed because of the plaintiff's delays in producing materials for discovery. The defendant emphasizes that the hearing on the summary judgment motion, wherein it orally requested sanctions, occurred mere days after the new rule became effective. These scheduling fortuities should not, according to the defendant, result in frivolous conduct going unpunished.

¶ 89. The plaintiff offers reasons why retroactive application of new § (Rule) 802.05 (2005–06) would not

impose an unreasonable burden on the defendant. The plaintiff emphasizes that the new rule was adopted, after extensive and prolonged proceedings, on March 31, 2005, months before it became effective. Accordingly, the plaintiff argues that the defendant was on notice about the adoption of the new rule and had time to comply with the new rule's requirements.

¶ 90. Further, the plaintiff contends that the defendant had numerous opportunities to bring a motion for sanctions if it believed that the plaintiff had commenced or continued a frivolous action; it did not have to wait until after summary judgment was granted and the new rule went into effect.

¶ 91. The plaintiff also disputes that it was at fault for the delay that resulted in the hearing on summary judgment occurring after the effective date of new rule Wis. Stat. § (Rule) 802.05 (2005–06). Moreover, the plaintiff asserts that the defendant could have requested a stay of the proceedings to bring the motion for sanctions in compliance with the new rule, despite this delay.

■■■■

¶ 92. As this brief recitation of some of the parties' arguments illustrates, the question remains whether it is an unreasonable burden to apply new Wis. Stat. § (Rule) 802.05 (2005–06) retroactively to the instant case. Rather than have this court make the determination without an appropriate record and without the circuit court's findings of fact and conclusions of law, we remand the cause to the circuit court.

¶ 93. In addition to deciding which provisions governing sanctions for frivolous conduct—either the new Wis. Stat. § (Rule) 802.05 (2005–06) or former Wis. Stat. §§ 802.05 and 814.025 (2003–04)—to apply, the

circuit court on remand must also decide, under the appropriate provision, whether sanctions are warranted, and if so, what kind. A party's conduct might be found to be frivolous under one version of the rule or statute but not under another. Likewise, the nature of sanctions differs among the various provisions governing frivolous conduct.

¶ 94. In the instant case, the circuit court only ruminated about whether the plaintiff's conduct might be found frivolous were the former provisions, §§ 802.05 and 814.025 (2003–04), applicable.

¶ 95. Several isolated statements of the circuit court can be read to suggest that it found that the plaintiff commenced or continued a frivolous lawsuit according to the former provisions. For instance, the circuit court announced that:

> So I conclude on that at least on the basis of fact and at law that the continuation of this lawsuit by Trinity [the plaintiff], along with the multitude of documents that they had gotten clearly showing dissatisfaction with Trinity's actions in this case, that there was probably more than ample material available to Trinity that they should have realized that the continuation of this case would have been fruitless and it should have been terminated at an earlier time and fashion, but it didn't. It continued on.
>
> I believe that, in summary, if we were using the old law under 802.05 and 814.025, that this was not an action that was well grounded in fact or in law.

The defendant points to these statements and insists that the circuit court indisputably found frivolousness.

¶ 96. Some of the circuit court's statements suggesting that the plaintiff maintained a frivolous action, however, are ambivalent. For instance, the circuit court stated in equivocal terms that "there was *probably* more

337

than ample material available to [the plaintiff] that they should have realized that the continuation of this case would have been fruitless -and it should have been terminated at an earlier time and fashion" (emphasis added).

¶ 97. Other comments of the circuit court undermine our confidence that the circuit court clearly concluded that the plaintiff commenced a frivolous lawsuit.

¶ 98. For instance, the circuit court described how the plaintiff's arguments that an objective standard must be used to gauge the "customer's satisfaction" for purposes of contract termination were "somewhat arguable" and "possibly" could "carry weight with a different court." This language definitely is not a clear finding that the plaintiff's commencement of the action was not "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."[59] The circuit court stated in pertinent part:

> And then I turn to whether the position taken by Trinity [the plaintiff] on the objective versus subjective standard was a position that they could argue asking for some change in Wisconsin law or an extension of Wisconsin law. I guess that might be somewhat arguable. I concluded that Wisconsin law was very clear that we don't follow an objective standard and I wasn't necessarily convinced at all, my remarks clearly show that, that Trinity's argument for an objective standard just didn't carry any weight with the court.
>
> Could that carry weight with a different court? Possibly. . . .

The circuit court seemingly recognized that, even if not justified by current law, the plaintiff's argument for a modification of the law had some merit.

---

[59] Wis. Stat. § 802.05(1)(a) (2003–04).

¶ 99. In short, the circuit court's ruminations about frivolousness were not necessary for its decision and should not under the circumstances of the present case substitute for clear findings of fact and conclusions of law.[60] Noncommittal, inconclusive suggestions and ruminations by a circuit court do not constitute a reviewable ruling on frivolousness. We remand the cause for the circuit court to determine whether the plaintiff engaged in frivolous conduct, the nature and timing of the conduct, and the appropriate sanctions, if any.

\* \* \* \*

¶ 100. For the reasons set forth, we hold, like the circuit court and the court of appeals, that new Wis. Stat. § (Rule) 802.05 (2005–06) is a procedural rule and that procedural rules generally have retroactive application. We conclude that new rule Wis. Stat. § (Rule) 802.05 (2005–06) is not to be applied retroactively when the new rule diminishes a contract, disturbs vested rights, or imposes an unreasonable burden on the party charged with complying with the new rule's requirements.

¶ 101. We therefore reverse the decision of the court of appeals and the order of the circuit court. These courts erred as a matter of law in holding that new rule Wis. Stat. § (Rule) 802.05 (2005–06) had

---

[60] In *Jandrt,* 227 Wis. 2d at 538, reviewing the circuit court's exercise of discretion in imposing sanctions under former §§ 802.05 and § 814.025 (2003–04), the court noted that the circuit court made 118 findings of fact and 74 conclusions of law in regard to the defendant's motion for sanctions. In the instant case, the circuit court made no formal findings of fact or conclusions of law regarding frivolousness.

retroactive application without exception. We remand the cause to the circuit court for further proceedings consistent with this opinion. The circuit court must determine whether retroactive application of new Wis. Stat. § (Rule) 802.05 (2005–06) imposes an unreasonable burden on a party who must comply with the procedural requirements of the new rule. After determining which provisions—either new Wis. Stat. § (Rule) 802.05 (2005–06) or §§ 802.05 and 814.025 (2003–04)—to apply using the unreasonable burden standard, the circuit court must determine under the applicable provision whether the plaintiff engaged in frivolous conduct in commencing or maintaining the lawsuit and what sanctions, if any, should be imposed on the plaintiff.

¶ 102. *By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶ 103. PATIENCE DRAKE ROGGENSACK, J. (*concurring in part and dissenting in part*). While I agree with the majority's decision to reverse and remand to the circuit court because the court was not required to apply Wis. Stat. § 802.05 (2005–06) to Scott Oil Company, Inc.'s (Scott) claim, majority op., ¶ 7, I write separately because I disagree with the majority's analysis and also because I conclude that it is Wis. Stat. § 814.025 (2003–04)[1] that the circuit court should apply on remand, if Scott proves its claim that Trinity Petroleum, Inc. (Trinity) commenced or continued a frivolous action.

¶ 104. The majority opinion's analysis omits three necessary determinations: (1) it fails to analyze and

---

[1] All subsequent references to Wis. Stat. § 814.025 are to the 2003–04 version. All subsequent references to other statutes are to the 2005–06 version unless otherwise noted.

decide whether Scott's claim under Wis. Stat. § 814.025 is a substantive claim that accrued prior to July 1, 2005; (2) it fails to analyze the effect of Wis. Stat. § 990.04 and Supreme Court Order 03–06 on Scott's § 814.025 claim; and (3) it fails to apply the test we set out in *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 109, 280 N.W.2d 757 (1979), the *Chevron/Kurtz* test, to determine whether Supreme Court Order 03–06 ought not be applied retroactively. Instead, it focuses on whether the circuit court is required to apply Wis. Stat. § 802.05 on remand. The determinations I outline are necessary to analyzing the parties' rights and obligations in the case before the court.

¶ 105. Because I conclude that: (1) Scott's claim for relief under Wis. Stat. § 814.025 is a substantive claim that accrued before July 1, 2005; (2) Wis. Stat. § 990.04 precludes applying Wis. Stat. § 802.05 or Supreme Court Order 03–06 to negate Scott's § 814.025 claim; and (3) under the *Chevron/Kurtz* test, Supreme Court Order 03–06 should not be applied retroactively to preclude Scott's claim under § 814.025, I respectfully dissent from the analysis of the majority opinion. However, I do concur in its decision to reverse and remand to the circuit court, where I would direct the court to apply § 814.025 if Scott proves its claim.

## I. BACKGROUND

¶ 106. Scott and Trinity had a contractual relationship wherein Trinity agreed to deliver petroleum products to Scott's customers for a period of five years. The terms of the contract permitted cancellation if Trinity did not perform to the "customer's satisfaction." After Scott received several complaints from its customers about the poor delivery services Trinity was providing, Scott gave notice to Trinity that it was terminating the contract.

¶ 107. On April 6, 2004, Trinity commenced an action against Scott for breach of contract. It is out of Trinity's lawsuit for breach of contract that Scott's claim under Wis. Stat. § 814.025 arose. Over the course of the litigation—during mediation proceedings and circuit court proceedings—Scott repeatedly asserted to Trinity that its claim was frivolous to file and frivolous to continue.

¶ 108. On May 5, 2005, Scott moved for summary judgment of dismissal. A hearing was set for June 6, 2005, but was postponed until July 5, 2005, because certain deposition transcripts could not be made available in sufficient time for Trinity to reply to Scott's motion.

¶ 109. On July 5, 2005, the circuit court granted Scott summary judgment of dismissal, and Scott orally moved for costs and fees, claiming Trinity commenced and continued a frivolous action. The circuit court asked that Scott place its motion in writing, which it did on July 21, 2005, alleging violations of Wis. Stat. § 814.025 and Wis. Stat. § 802.05 (2003–04).

¶ 110. During the course of Trinity's lawsuit against Scott, this court engaged in rule-making under the authority granted in Wis. Stat § 751.12(1).[2] Rule-making is a quasi-legislative function wherein the court is empowered to regulate pleadings, practice and procedure before the courts. *See Wick v. Mueller,* 105

---

[2] Wisconsin Stat. § 751.12(1) states:

The state supreme court shall, by rules promulgated by it from time to time, regulate pleading, practice, and procedure in judicial proceedings in all courts, for the purposes of simplifying the same and of promoting the speedy determination of litigation upon its merits. The rules shall not abridge, enlarge, or modify the substantive rights of any litigant.

Wis. 2d 191, 313 N.W.2d 799 (1982).[3] The rule-making process was commenced by a petition from members of the State Bar of Wisconsin. They requested the court to "repeal" Wis. Stat. § 814.025 and Wis. Stat. § 802.05 (2003–04) and to recreate § 802.05 in parallel form with Fed. R. Civ. P. 11.

¶ 111. In 1978, this court created the original version of Wis. Stat. § 802.05 during rule-making under Wis. Stat. § 751.12(1), which permits the court to legislate to regulate "pleading, practice, and procedure in judicial proceedings in all courts." § 751.12(1). However, Wis. Stat. § 814.025 was not created by this court. Section 814.025 was created by the legislature.

¶ 112. Thomas S. Hanson, who was a member of the Wisconsin State Assembly in 1978 when the legislature enacted Wis. Stat. § 814.025, wrote to the court during its rule-making process in 2004. He said that he had been the author of 1977 Assembly Bill 237 that began the legislative creation of § 814.025. Mr. Hanson explained to the court that by enacting § 814.025, it was the intent of the legislature to establish a mandatory make-whole remedy for persons victimized by frivolous lawsuits. *See* Letter from Thomas S. Hanson to the Supreme Court (Oct. 29, 2004). He explained that "[m]aking sanctions discretionary and permitting something less than a 'make whole' recovery for the victim are clearly contrary to what I intended when we passed § 814.025." *Id.* Mr. Hansen said that by enacting

---

[3] The court's power in rule-making is limited. For example, although the supreme court could by rule establish the point at which the time for appeal would begin to run, it could not establish by rule whether a particular type of order was appealable. *Wick v. Mueller,* 105 Wis. 2d 191, 196–97, 313 N.W.2d 799 (1982). The legislature has the sole prerogative to legislate whether a particular order is appealable. *Id.* at 196.

§ 814.025, the legislature intended to create a "substantive right of recovery" for members of the public who are victimized by frivolous lawsuits. *Id.* He asked the court to deny the lawyers' petition to "repeal" § 814.025. *Id.*

¶ 113. This court did as requested by the lawyer-petitioners. In Supreme Court Order 03–06, it "repealed" Wis. Stat. § 802.05 and Wis. Stat. § 814.025 (2003–04) and recreated § 802.05 in parallel form to Fed. R. Civ. P. 11. Supreme Court Order 03–06, 2005 WI 38, 278 Wis. 2d xiii–xiv (eff. Mar. 31, 2005). In so doing, it ignored the fact that § 814.025 was not a judicial rule subject to the court's rule-making powers. It also ignored the strong dissents of three members of the court. Supreme Court Order 03–06, 278 Wis. 2d at xxvi–xxxiii. This is the first time this court has struck down an act of the legislature that was not held unconstitutional. The court's new version of § 802.05 became effective July 1, 2005.[4]

¶ 114. In deciding Scott's motion alleging that Trinity commenced and continued a frivolous action,

---

[4] In response to the court's "repealing" Wis. Stat. § 814.025, the legislature passed 2005 Senate Bill 501. This new legislation attempted to reinstate the make whole remedy the legislature had created in 1978. According to the analysis prepared by the Legislative Reference Bureau, 2005 S.B. 501:

> requires a court to award a successful party the actual costs of the action, including reasonable attorney fees, if the court finds that the action is frivolous. The bill uses the same standards for determining if an action is frivolous as were used in the law before July 1, 2005.

Legislative Reference Bureau Analysis of 2005 S.B. 501. Both houses of the legislature passed 2005 S.B. 501 and presented it to the governor for his signature; however, he vetoed it. The senate could not muster the two-thirds majority needed to override the governor's veto. Bill history for 2005 S.B. 501.

the circuit court concluded that it could not award sanctions because Wis. Stat. § 802.05 must be applied. The circuit court reasoned that the new § 802.05 applied because it was a procedural statute; the motion was filed after July 1, 2005, the effective date of § 802.05; and the new § 802.05 required a 21–day notice of intent to file a claim alleging the action was frivolous, which notice Scott had not given. The court of appeals affirmed the circuit court, and we accepted Scott's petition for review.

## II. DISCUSSION

### A. Standard of Review

¶ 115. Deciding when a claim for relief accrues based on undisputed facts is a question of law. *See Meracle v. Children's Serv. Soc. of Wis.,* 149 Wis. 2d 19, 25–26, 437 N.W.2d 532 (1989). Whether a statute is procedural or has substantive components is also a question of law for our independent review. *See Matthies v. Positive Safety Mfg. Co.,* 2001 WI 82, ¶¶ 15, 21, 244 Wis. 2d 720, 628 N.W.2d 842; *Schulz v. Ystad,* 155 Wis. 2d 574, 596, 456 N.W.2d 312 (1990).

¶ 116. The interpretation of Wis. Stat. § 990.04 and its application to a particular set of facts are legal questions for which we do not defer to the decisions of other courts. *Warehouse II, LLC v. DOT,* 2006 WI 62, ¶ 4, 291 Wis. 2d 80, 715 N.W.2d 213. However, we are aided by the prior analyses of the court of appeals and the circuit court. *Spiegelberg v. State,* 2006 WI 75, ¶ 8, 291 Wis. 2d 601, 717 N.W.2d 641.

¶ 117. Whether a judicial holding, such as Supreme Court Order 03–06, should be applied retroactively or prospectively is a question of policy for our independent review. *Kurtz,* 91 Wis. 2d at 108.

## B. Scott's Claim

¶ 118. The majority opinion spends most of its energy addressing whether Wis. Stat. § 802.05 is procedural or substantive. It does not analyze whether Scott had a substantive right of action under Wis. Stat. § 814.025 that had accrued before the statute was "repealed." Instead, it summarily asserts that § 814.025 "did not create a substantive, vested right to costs and reasonable attorney fees." Majority op., ¶ 48. The majority opinion is heavily invested in concluding that § 814.025 has no substantive component;[5] therefore, its attempt to shift the reader's focus to analyzing § 802.05 is understandable. However, an analysis of the remedies available under § 814.025 before its "repeal" is required by the case before us.

¶ 119. Wisconsin Stat. § 814.025(1) states in relevant part:

> If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

It provided substantive rights and remedies that should be held to apply to Scott's claim because Scott had a claim capable of present enforcement (that Trinity

---

[5] While this court has been delegated a rule-making function by the legislature, that delegation is limited. Under Wis. Stat. § 751.12(1), which this court cited as its authority for the actions taken in Supreme Court Order 03–06, the rules this court creates "shall not abridge, enlarge, or modify the substantive rights of any litigant." § 751.12(1). Therefore, the only way this court can assert it had authority to strike down Wis. Stat. § 814.025 is if that statute does not encompass any substantive rights.

commenced and continued a frivolous action) and a suable party (Trinity) against whom it could enforce its claim before the "repeal" of § 814.025. *Meracle,* 149 Wis. 2d at 26 (citing *Barry v. Minahan,* 127 Wis. 570, 573, 107 N.W. 488 (1906)).

¶ 120. Determining whether a statute is procedural or has substantive components can have profound implications. *See Snopek v. Lakeland Med. Ctr.,* 223 Wis. 2d 288, 294, 588 N.W.2d 19 (1999); *State ex rel. Schmidt v. Dist. No. 2, Town of Red Springs,* 237 Wis. 186, 190, 295 N.W. 36 (1941). Substantive statutes create, define or regulate rights or obligations. *Betthauser v. Med. Protective Co.,* 172 Wis. 2d 141, 147–48, 493 N.W.2d 40 (1992) (citing *City of Madison v. Town of Madison,* 127 Wis. 2d 96, 102, 377 N.W.2d 221 (Ct. App. 1985)). A statute cannot be procedural if it takes away "vested rights." *Id.* A vested right can be a remedy that is available, but not yet awarded, to a party who could successfully petition the court for the remedy. *See Schulz,* 155 Wis. 2d at 598.

¶ 121. We discussed this concept in *Schulz* when we considered Wis. Stat. § 767.32(1m), which eliminated a child support obligor's right to petition for the remedy of retroactive modification of support, when previously the "circuit courts had discretion to modify, reduce, or eliminate accumulated child support arrearages." *Id.* We concluded that § 767.32(1m) was substantive because it worked "such a substantial change in the legal rights and obligations of a child support obligor." *Id.* So too in the case before us, the "repealing" of Wis. Stat. § 814.025 changed legal rights and remedies that had previously existed.

¶ 122. The majority asserts that Scott had no "vested right" under Wis. Stat. § 814.025 to recover reasonable attorney fees if Trinity's conduct were held

347

to be frivolous "until a circuit court made a finding of frivolousness." Majority op., ¶ 62. The majority opinion's assertion, for which it cites no authority, is contrary to controlling precedent because the right to a non-discretionary remedy is "vested" before a court makes a finding that supports an order for the remedy. *Matthies*, 244 Wis. 2d 720, ¶ 22. The right to a remedy is vested when a right to the remedy "accrues" under the facts of the case. *Id.* A claim "accrues" when there exist "a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Meracle*, 149 Wis. 2d at 26 (quoting *Barry*, 127 Wis. at 573).

¶ 123. In *Matthies,* we reviewed whether a statute on comparative negligence that was amended after Matthies was injured, but before he filed his lawsuit, applied to limit the damages he could collect to an amount representative of each tortfeasor's causal negligence. *Matthies*, 244 Wis. 2d 720, ¶ 1. In our analysis of the question presented, we first determined when Matthies' claim for relief accrued. *Id.*, ¶¶ 21–22.

¶ 124. Matthies asserted his claim accrued at the time of his injury, and the tortfeasors asserted "Matthies ha[d] no vested or accrued right in a particular remedy" until a final judgment. *Id.*, ¶ 21. We disagreed with the tortfeasor's contention. *Id.* And even though Matthies had not yet filed his lawsuit when the law was changed from joint and several liability for negligence to comparative negligence, we held that "Matthies d[id] have a vested right to recover all of his damages that are adjudged due to him from any defendant that may be jointly and severally liable for his injuries." *Id.*

¶ 125. We reasoned that "Matthies ha[d] a vested right in his claim for negligence" because his claim "accrued on the date of his accident and injury" and it

348

was the "date of injury which [was] the triggering event with respect to the application of Wis. Stat. § 895.045(1)." *Id.*, ¶ 22. We then explained that because he was entitled to recover under the doctrine of joint and several liability when his claim accrued, the statutory change in forms of liability affected vested rights. *Id.*, ¶ 23.

¶ 126. Applying *Matthies* to the question of whether Trinity has a claim to a substantive remedy under Wis. Stat. § 814.025 that accrued before it was "repealed" on July 1, 2005, I look to the injury-producing conduct, just as we did in *Matthies*. It is alleged that Trinity injured Scott by commencing and continuing a frivolous lawsuit. Trinity's injury-producing conduct occurred before July 1, 2005. Therefore, under *Matthies,* Scott's claim for the mandatory make-whole remedy as set out in § 814.025 accrued prior to July 1, 2005 and it became a vested right at that time. *Id.*, ¶ 22; *Schulz,* 155 Wis. 2d at 598 (concluding that a change in legal rights and obligations is prospective only). Therefore, the circuit court should apply the remedy of § 814.025 on remand, if Scott proves its claim.[6]

¶ 127. My conclusion that the circuit court should apply Wis. Stat. § 814.025 on remand if Scott proves its claim finds further support in *Niesen v. State,* 30 Wis. 2d 490, 141 N.W.2d 194 (1966). In *Niesen,* the plaintiff brought an action for damages alleging that "the state highway commission, during the construction of Highway I-94 in the fall of 1963, blocked the highway ditch and failed to provide the proper drainage, causing the flooding of the plaintiff's land in the spring of 1964 and thereby rendering it useless for planting." *Id.* at 491. During 1964, Wis. Stat. § 88.38(2) (1961–62), which

---

[6] The Wis. Stat. § 814.025 make-whole remedy is a nondiscretionary remedy. *Jandrt v. Jerome Foods, Inc.,* 227 Wis. 2d 531, 576, 597 N.W.2d 744 (1999).

permitted a suit for damages under factual circumstances such as Niesen presented, was repealed and recreated as Wis. Stat. § 88.87 by ch. 572, Laws of 1963. *Id.* at 492. It became effective June 13, 1964. *Id.* It did not permit a claim for damages directly against the State as § 88.38(2) (1961–62) had. *Id.*

¶ 128. We concluded that Niesen's claim for relief arose prior to the effective date of the new statute because the State's negligent conduct preceded the effective date of the statutory change. *Id.* at 493. We also concluded that there was no statement in the new statute that the legislature intended by the repeal of Wis. Stat. § 88.38(2) (1961–62) to terminate rights of action that had accrued before the statutory change. *Id.* at 493–94. Accordingly, we looked to the effect of Wis. Stat. § 990.04 on Niesen's claim under the repealed statute. *Id.* at 493–95. We held that Niesen could maintain his suit for damages because the "rights which had arisen in favor of the plaintiff under sec. 88.38(2), Stats., prior to its being repealed are preserved to Mr. Niesen by sec. 990.04." *Id.* at 495.

¶ 129. Here, Scott's right to make a claim under Wis. Stat. § 814.025 arose at the time of Trinity's conduct of allegedly filing and continuing a frivolous lawsuit. This occurred before July 1, 2005. There was no discussion at the rule-making hearing prior to the "repeal" of § 814.025 that the court intended to cut off rights of action that had accrued before July 1, 2005. Accordingly, as under *Niesen,* on remand, the circuit court should apply § 814.025 if Scott proves its claim.[7] *Id.* at 493–95.

---

[7] The majority asserts that Wis. Stat. § 802.05 is the "governing provision" when comparing it with Wis. Stat. § 814.025. Majority op., ¶ 24. I am uncertain what a "governing provision" is. However, we have concluded that when an action is proved frivolous, the relief accorded to those victimized by a frivolous

## C. Wisconsin Stat. § 990.04

¶ 130. The majority opinion discards Scott's claimed application of Wis. Stat. § 990.04 in a footnote. Majority op., ¶ 48 n.35. Section 990.04 states in relevant part:

> The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefore shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute.

As I have explained above, Trinity's allegedly frivolous acts occurred before the "repeal" of Wis. Stat. § 814.025; and therefore, Scott's "right of action" accrued before the statute was struck down.

¶ 131. We construed and applied Wis. Stat. § 990.04 in *Jackson County Iron Co. v. Musolf,* 134 Wis. 2d 95, 396 N.W.2d 323 (1986). In *Jackson County Iron,* we reviewed § 990.04 in the context of a court of appeals decision that held the repeal of Wis. Stat. § 70.94(3)(a) (1975) deprived Jackson County Iron of its

---

action is the mandatory make-whole remedy of § 814.025. *Jandert,* 227 Wis. 2d at 563. As we explained:

> Costs and reasonable attorney fees must be awarded [] if the court is satisfied that the [law] firm knew or should have known that its allegation of causation was "without any reasonable basis in law or equity."

*Id.*

administrative appeal. *Id.* at 104. We concluded that the court of appeals erred because "it is the clear intention of sec. 990.04 to preserve all rights which may have arisen before the repeal of a statute unless such rights are 'specially and expressly remitted, abrogated or done away with by the repealing statute.'" *Id.* (quoting *Niesen,* 30 Wis. 2d at 493). We also explained that "an act which repeals or modifies a remedy does not affect a pending action." *Id.* (citing *Bratton v. Town of Johnson,* 76 Wis. 430, 434, 45 N.W. 412 (1890)).

¶ 132. As was the case in *Jackson County Iron,* Scott's right of action against Trinity arose before Wis. Stat. § 814.025 was "repealed." By the statute's plain wording, which we described in *Jackson County Iron* as "the clear intention" of Wis. Stat. § 990.04, *id.,* Scott's claim against Trinity was unaffected by the "repeal" of § 814.025. Accordingly, I conclude that § 990.04 provides additional support for the conclusion that Scott's claims under § 814.025 should be addressed upon remand of this action.

D. The *Chevron/Kurtz* Standards

¶ 133. The majority opinion repeatedly focuses on whether Wis. Stat. § 802.05 was required to be applied retroactively to Scott's claim that Trinity commenced and continued a frivolous action. Majority op., ¶¶ 4, 7, 8, 32–39, 52–62. In so doing, it does not analyze whether Supreme Court Order 03–06, that "repealed" Wis. Stat. § 814.025 and Wis. Stat. § 802.05 (2003–04), should be applied to eliminate rights that would otherwise affect a claim that had accrued under § 814.025 in an action that had commenced.

¶ 134. In my view, Supreme Court Order 03–06 is not a judicial holding such that the *Chevron/Kurtz* test applies, nor do any of the order's conclusions about Wis.

Stat. § 814.025 establish precedent. The majority opinion agrees that *Chevron/Kurtz* does not apply to the issues presented. Majority op., ¶ 78. However, it comes to that conclusion by shifting the reader's focus to Wis. Stat. § 802.05 and asserting that *Chevron/Kurtz* is not the correct test for determining whether a *statute* should be applied prospectively or retroactively. Majority op., ¶ 79.

¶ 135. However, one must note that it was Supreme Court Order 03–06 that eliminated the rights established by Wis. Stat. § 814.025 by "repealing" it. There is nothing in Wis. Stat. § 802.05 that even mentions § 814.025, let alone "repeals" it. By shifting the reader's focus from Supreme Court Order 03–06, the majority opinion ducks the issue of how it is actually employing Supreme Court Order 03–06 in its decision. That is, the majority opinion *does treat* Supreme Court Order 03–06 as though it were a judicial holding when it relies on the majority's prior determination during rule-making that § 814.025 has no substantive components.[8] Majority op., ¶ 42. However, since the rule-making proceeding appears to have caused Supreme Court Order 03–06 to become a "judicial holding," the *Chevron/Kurtz* test should be applied to determine whether that holding in regard to § 814.025 should have retroactive effect.

¶ 136. In *Kurtz*, this court analyzed how to decide whether a "judicial holding" should or should not be applied retroactively. *Kurtz*, 91 Wis. 2d at 108–09. The court quoted and then applied a three-factor test em-

---

[8] Until today, we have never held or implied that we establish binding precedent for this or any other court by rule-making. Our rules remain subject to interpretation and testing, just as any other legislation does. However, the majority refuses to test its own rule here.

ployed by the United States Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971) to determine whether a holding ought not be applied retroactively:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, . . . "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we . . . weigh[] the inequity imposed by retroactive application, for "[w]here a decision of the Court could produce substantial inequitable results if applied retroactively, [we avoid] 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 109 (quoting *Chevron Oil,* 404 U.S. at 106–07) (further citations omitted). When the court applied the *Chevron* test, it concluded that the judicial holdings then under consideration did not satisfy the test's three factors and therefore they were applicable to the claims before the court. *Id.*

¶ 137. If Supreme Court Order 03–06 is a "judicial holding," then we should analyze it under the *Chevron/Kurtz* test. In applying the *Chevron/Kurtz* test to the court's 03–06 Order, I conclude that it should not be applied to preclude the application of Wis. Stat. § 814.025 to Scott's claim because the order established a new rule that changed the law; there are significant demerits in applying it here; and applying the order to negate Scott's claims would be inequitable.

¶ 138. The "repeal" of Wis. Stat. § 814.025 creates a new rule under *Chevron/Kurtz* for several reasons. First, § 814.025 provided that, as a sanction for filing or

continuing a frivolous claim, reasonable attorney fees *must be paid to the prevailing party.*[9] *Jandrt v. Jerome Foods, Inc.,* 227 Wis. 2d 531, 576, 597 N.W.2d 744 (1999); *Sommer v. Carr,* 99 Wis. 2d 789, 799, 299 N.W.2d 856 (1981); *Stoll v. Adriansen,* 122 Wis. 2d 503, 511, 362 N.W.2d 182 (Ct. App. 1984). Under the rule established by Supreme Court Order 03–06, the circuit court may, but is not required, to award attorney fees as a sanction for filing a frivolous action. Second, § 814.025 required that any sanctions ordered *must be paid to the person injured. Jandrt,* 227 Wis. 2d at 577. Under the rule established by Supreme Court Order 03–06, any sanction ordered may be paid to the court, rather than to the prevailing party. Third, § 814.025 *applies to one who commences or continues a frivolous action,* while the rule established by Supreme Court Order 03–06 applies only to commencing a frivolous action. Therefore, under the court's new rule, no sanctions are available if the action was not frivolous when commenced, but at some point in the litigation it became frivolous to continue it. *See id.* at 547 (concluding that wording identical to that in Wis. Stat. § 802.05 does not "authorize[] the imposition of sanctions upon a party maintaining a frivolous action"). This last change in the law could be important to Scott, as it was in *Jandrt.* In *Jandrt,* we concluded that Jandrt did not violate Wis. Stat. § 814.025 when she filed the action, but that she

---

[9] In the absence of a statute or contract that authorizes payment of attorney fees to the prevailing party, Wisconsin follows the American Rule where each party pays its own attorney fees. *Sommer v. Carr,* 99 Wis. 2d 789, 798, 299 N.W.2d 856 (1981). Therefore, a party's opportunity to receive compensation under Wis. Stat. § 814.025 for attorney fees generated by required participation in a frivolous lawsuit was a significant departure from the common law. *Id.*

should have known the action was frivolous when she continued it. *Id.* at 564.

¶ 139. In addition, under the second *Chevron/Kurtz* factor, there are significant demerits in applying Supreme Court Order 03–06 to preclude the use of Wis. Stat. § 814.025 for Scott's claim. Because the change in law that was caused by Supreme Court Order 03–06 occurred during judicial rule-making, the change in the law did not receive the public notice that other legal issues this court has addressed have received when a change in the law occurred as part of a case-opinion of this court. For example, there was no petition for review of another court decision; there was no announcement in the popular press that we had accepted for review the potential "repealing" of § 814.025, as the court routinely does through the court information office when petitions for review are accepted; there was no press coverage to inform members of the public that we were considering striking down § 814.025; and there were no briefs filed with the court on both sides of the petition to "repeal" § 814.025, so that the court could examine in a full adversarial posture whether § 814.025 contained remedies that were substantive.

¶ 140. Finally, under the third *Chevron/Kurtz* factor, applying Supreme Court Order 03–06 to preclude Scott's claim under Wis. Stat. § 814.025 would produce inequitable results, such as the circuit court being without the power to make Scott whole if it concludes Trinity's action was not frivolous when filed or frivolous when continued. Accordingly, under the *Chevron/Kurtz* test, Supreme Court Order 03–06 should not be applied retroactively to Scott's claim under § 814.025, which is a substantive claim to a make-whole remedy that had accrued before this court entered its order.

356

## III. CONCLUSION

¶ 141. Because I conclude that: (1) Scott's claim for relief under Wis. Stat. § 814.025 is a substantive claim that accrued before July 1, 2005; (2) Wis. Stat. § 990.04 precludes applying Wis. Stat. § 802.05 or Supreme Court Order 03–06 to negate Scott's § 814.025 claim; and (3) under the *Chevron/Kurtz* test, Supreme Court Order 03–06 should not be applied retroactively to preclude Scott's claim under § 814.025, I respectfully dissent from the analysis of the majority opinion. However, I do concur in its decision to reverse and remand to the circuit court, where I would direct the court to apply § 814.025, if Scott proves its claim.

¶ 142. For the foregoing reasons, I concur in part and dissent in part.

¶ 143. I am authorized to state that Justices JON P. WILCOX and DAVID T. PROSSER join this concurrence/dissent.